IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**BEVERLY GREENWAY**                                                                              **PLAINTIFF**

**V.**                              **CASE NO. 3:17-CV-71-BD**

**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Beverly Greenway has appealed the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income.[1] Both parties have submitted appeal briefs, and the case is ready for decision.[2]

**I.    Background:**

Ms. Greenway alleges that she became limited in her ability to work due to bipolar disorder, anxiety, hepatitis C, ovary problems, and depression. (SSA record at 86) After conducting a hearing, the Administrative Law Judge[3] ("ALJ") concluded that Ms. Greenway had not been under a disability within the meaning of the Social Security Act ("the Act") at any time from July 16, 2014 through March 16, 2016, the date of the

---

[1] Ms. Greenway initially applied for disability benefits and supplemental security income but withdrew her claim for disability benefits at the hearing and amended her alleged onset date to July 16, 2014, the date the application for supplemental security income was filed. (SSA record at 16)

[2] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

[3] The Honorable John H. Goree.

1

decision. (*Id.* at 28)  The Appeals Council denied a request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-5) Ms. Greenway then filed her complaint initiating this appeal. (Docket entry #2)

Ms. Greenway was 51 years old at the time of the hearing and lived with a friend and his mother. (SSA record at 41) She had a high school diploma, had completed cosmetology school and had worked sporadically as a cosmetologist. (*Id.* at 51-52, 59)

**II.**     **The ALJ's Decision:**

The ALJ determined that Ms. Greenway had not engaged in substantial gainful activity since July 16, 2014, and that her hepatitis C, lumbar degenerative disc disease, bipolar disorder, mood disorder, and anxiety disorder were severe impairments; but also, that she did not have an impairment or combination of impairments that met a listed impairment. (*Id.* at 18-19) He further found that Ms. Greenway's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (*Id.* at 22-24)

Based on these findings, the ALJ concluded that, during the relevant time period, Ms. Greenway retained the residual functional capacity ("RFC") for light work except that she could stand and/or walk up to 6 hours in an 8-hour day including continually for 1-2 hours without interruption; could never balance; could only occasionally climb, stoop, crouch, or crawl; was limited to unskilled work including meeting, greeting, making change, and giving or receiving simple instructions and directions; and was

limited to only occasional contact with co-workers, supervisors and the general public.[4] (*Id.* at 21)

The ALJ found that Ms. Greenway had no past relevant work. (*Id.* at 26-27) At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Ms. Greenway's age, education, work experience and RFC, that she was capable of performing work in the national economy as housekeeping cleaner and assembler, both of which are classified as light, unskilled work, with an SVP of 2. (*Id.* at 28) The ALJ determined, therefore, that Ms. Greenway was not disabled. (*Id.*)

## III.   Discussion:

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). Substantial evidence on the record *as a whole* requires a court to take into account record evidence that fairly detracts from the ALJ's decision. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Id.*

---

[4] Had the ALJ found that Ms. Greenway could perform only sedentary work, the grids would have applied and required a finding that she was disabled because, at the time of the hearing, she was closely approaching advanced age. (SSA record at 71)

3

**A. Issues on Appeal**

Ms. Greenway claims that the ALJ erred in finding she has the residual functional capacity to perform a limited range of light, unskilled work. She asserts that she is unable to work due to the combined effects of hepatitis C, lumbar degenerative disc disease, bipolar disorder, mood disorder, and anxiety disorder. (#11 at 12)

The Commissioner ordered a consultative mental diagnostic evaluation of Ms. Greenway, and Ms. Greenway provided physical and mental medical source statements from her treating physicians. Ms. Greenway claims that the ALJ erred in failing to give her treating physicians' opinions substantial weight. (#11 at 12-21) As part of this claim, Ms. Greenway points out that the ALJ gave the consulting physician's opinion great weight and relied on it to find that she could perform unskilled work, in spite of the fact that the consulting physician was not given Ms. Greenway's pertinent background information as required by the Commission's own regulations. (#11 at 20-21) Ms. Greenway claims this was error.

**B. Physical Limitations**

Terry Hunt, M.D., Ms. Greenway's treating physician, assessed Ms. Greenway's physical limitations. He opined that Ms. Greenway's ability to lift and carry was limited to 10 pounds occasionally and less than 10 pounds frequently; her maximum ability to stand and walk during an 8-hour day is limited to less than 2 hours (and no more than 10 minutes continuously); her maximum ability to sit during an 8-hour day was about 6 hours; and her maximum ability to reach in all directions or handle objects (gross

manipulation) was limited to occasional. He said that she was not capable of fine manipulation and also reported that she would need frequent rest periods, longer than normal breaks, the option to sit or stand at-will, and would very frequently have impaired ability to concentrate and persist in a job setting. He stated that she would miss three days of work per month and would not be capable of sustaining a full-time work schedule due to a combination of hepatitis C, chronic fatigue, and degenerative arthritis. (SSA record at 713-14)

The ALJ gave Dr. Hunt's opinion little weight stating that it was not supported by the balance of the medical evidence. He also rejected the opinions of the non-examining state-agency physicians who found that Ms. Greenway's physical impairments were non-severe. In spite of his rejection of all of the opinion evidence related to Ms. Greenway's physical impairments, he concluded that Ms. Greenway could perform a limited range of light work. (*Id*. at 25-26)

To support his rejection of Dr. Hunt's opinion, the ALJ pointed to physical examination records from Dr. Hunt noting that Ms. Greenway had normal gait and straight-leg raise testing and a lack of evidence of restriction on fingering and handling.[5] In contrast, Ms. Greenway points out that Dr. Hunt noted that she had difficulty standing erect and finding a comfortable position, muscle spasms, tenderness on palpation of her lumbar spine, and a *positive* straight-leg raising test on the right leg in June, 2015. (*Id*. at

---

[5] Ms. Greenway concedes that she did not complain of upper extremity problems to Dr. Hunt but contends that should not warrant discounting Dr. Hunt's opinion entirely. (#11 at 17)

5

655-56) Right leg weakness, tenderness to palpation in the lumbar spine, and pain upon movement were noted by Dr. Hunt throughout 2015, leading up to an October, 2015 MRI that showed marked degenerative changes in the spine. (*Id*. at 653-53, 666, 676) In the later months of 2015 and early in 2016, treatment notes are consistent with chronic back pain requiring strong, narcotic pain medication. (*Id*. at 719-24)

### C. Mental Limitations

The ALJ also gave Ms. Greenway's treating psychiatrist's opinions little weight and instead relied on the opinion of consulting examiner, Samuel Hester, Ph.D. (*Id*. at 25) Dr. Hester examined Ms. Greenway on November 11, 2014. He noted she had reported seeking treatment for her mental impairments from Larry S. Felts, M.D., for the past 20 years and had been diagnosed with mood disorder and anxiety disorders. In spite of her extensive treatment history for mental health impairments, Dr. Hester noted in his report that the only medical information that the Commissioner had provided him were SSA forms.

At the consultative examination, Ms. Greenway complained of mood swings with angry outbursts; memory loss; and generalized anxiety with panic attacks. (*Id*. at 563-64) She also reported a history of alcohol dependency, as well as cannabis and methamphetamine abuse. She also reported, however, that she had been through rehabilitation in 1994. She denied ongoing alcohol abuse, but conceded that she still drank occasionally and smoked cannabis for back pain relief. (*Id*. at 565) She reported

that Dr. Felts was currently prescribing Seroquel, Trazadone, and Xanax to treat her impairments. (*Id*. at 564)

On examination, Dr. Hester reported that Ms. Greenway was alert, fully oriented and cooperative, and her mood did not appear depressed or anxious. (*Id*. at 566) Her speech was normal and her thought process was logical. She was able to perform serial threes and single-digit addition and subtraction with ease. (*Id*. at 567) Dr. Hester diagnosed mood and anxiety disorder, by history; alcohol dependency in partial sustained remission; cannabis abuse; and dependent and borderline personality traits. (*Id*. at 568) He assigned Ms. Greenway a Global Assessment of Functioning ("GAF") score of 52. (*Id*.)

On December 10, 2014, a month after her consultative examination with Dr. Hester, Dr. Felts examined Ms. Greenway at Hometown Behavioral Health. She reported that her mood had been fluctuating and she had been having panic attacks, but that her sleep was "ok." (*Id*. at 701) On examination, her speech was normal; her affect was appropriate; her thought process was logical; her memory and concentration were good; but, she exhibited an anxious mood. (*Id*. at 702) He diagnosed bipolar disorder (mixed and severe) and anxiety disorder (NOS). (*Id*. at 703) He assessed a GAF score of 45. He prescribed Xanax, Seroquel, and Trazodone. (*Id*. at 704) The following month, Ms. Greenway appeared for a follow-up appointment with Dr. Felts. She reported a depressed mood with fatigue and less energy. Dr. Felts added Wellbutrin to her medication regimen. (*Id*. at 698, 700)

In April, 2015, Dr. Felts noted that Ms. Greenway continued to suffer from manic spells, although she was mostly depressed with difficulty sleeping. On examination, she had poor concentration, poor motivation, and was dysphoric. (*Id.* at 694-97) In July, 2015, Dr. Felts noted that Ms. Greenway was slightly worse due to increased stress. (*Id.* at 690-93) In October, Ms. Greenway retuned to Dr. Felts and appeared anxious and on edge. She was experiencing shortness of breath, nervousness, racing heart, and paranoia. She was easily distractible and her memory and concentration were only "fair." (*Id.* at 687-89)

Herman Clements, M.D., took over Ms. Greenway's treatment at Hometown Behavioral Health after Dr. Felts became ill and eventually died. He examined Ms. Greenway in January, 2016, and noted that Ms. Greenway's condition was worse with continued mood swings, irritability, and significant anxiety. (#11 at 18) He noted that her mood "limit[s] her ability to manage daily functions but her physical issues limit her as well." (SSA record at 726) He reported that her memory was fair but that her concentration was limited. He continued her medications. (*Id.* at 726-29)

Dr. Clements opined in a medical source statement completed in January, 2016, that Ms. Greenway's ability to function in the workplace was limited because she was markedly impaired in the areas of understanding and remembering instructions, maintaining attention and concentration for extended periods, working in coordination with others, completing a normal workday/workweek, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and

8

criticism from supervisors, getting along with co-workers and peers, maintaining socially appropriate behavior, and responding appropriately to changes in a work setting. He further opined that she had "extreme" limitation in the area of interacting appropriately with the general public. He diagnosed bipolar disorder and anxiety and stated she would miss more than three days of work per month. (*Id*. at 716-17)

### D. Evaluation of Opinion Evidence

Ms. Greenway asserts, and the Commissioner does not disagree, that the Commissioner did not provide Dr. Hester with pertinent background information relating to her psychiatric treatment records.[6] As a result, Dr. Hester based his opinion on his one-time examination of Ms. Greenway, at which he did not administer any diagnostic tests. The ALJ then relied on Dr. Hester's opinion to reject the opinion of her treating physician, who had the benefit of many years of treatment records.

"When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (quoting *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir. 2000)). "As a general matter, the report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Id*. The Eighth Circuit, however, has recognized two exceptions to this general rule: "(1) where other medical assessments

---

[6] Ms. Greenway provided the Commissioner with Dr. Felts's treatment records from May 2008 to October, 2014. (SSA record at 512-543)

are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.*

The ALJ relied on Dr. Hester's consulting opinion to reject Dr. Clements's treating physician opinion. But here, Dr. Hester's opinion did not encompass all of the relevant background information. The Commissioner's regulations require that, if ordering a consultative examination, the Commissioner will, "give the examiner any necessary background information about your condition." 20 C.F.R. §416.917. Courts have held that necessary background information includes medical records that provide the consultative examiner with the claimant's medical history, objective testing, and hospitalization records necessary to assist the consultant in determining the severity of the claimant's impairments. *See e.g.*, *Brantley v. Comm'r of Soc. Sec.*, 637 Fed. Appx. 888, 894-95 (6th Cir. 2016) (pointing to the Commissioner's own Program Operations Manual System ("POMS") that instructs employees to provide consultative examiners with relevant medical evidence including medical opinions and the Commissioner's Hearings, Appeals, and Litigation Law Manual ("HALLEX") that instructs staff to supplement a request for a consultative examination with a medical exhibits folder that is sent to the consultative examiner for review); *see also McCarter v. Berryhill*, No. 3:16-CV-385-CCS, 2018 WL 327765 at 7-8 (E.D. Tenn. Jan. 8 2018); *Kelly Brian Peacock v. Comm'r Soc. Sec.*, No. CV-17-523-PHX-BSB, 2018 WL 2753151 at 5-7 (D. Ariz. June 8, 2018).

A federal agency, such as the Social Security Administration, is bound to follow its regulations. *See Carter v. Sullivan,* 909 F.2d 1201, 1202 (8th Cir. 1990) (per curium) ("agency's failure to follow its own binding regulations is a reversible abuse of discretion.") (citing *City of Sioux City v. Western Area Power Admin.,* 793 F.2d 181, 182 (8th Cir. 1986); *Suciu v. Immigration & Naturalization Serv.,* 755 F.2d 127, 129 (8th Cir. 1985)); *see also United States v. Nixon,* 418 U.S. 683, 695–96 (1974) (concluding that a federal agency is bound to follow its own regulations); *Vega v. Colvin*, 128 F. Supp. 3d 1121, 1127 (N.D. Iowa 2015); *Reff v. Astrue*, No. CIV. 07-2515PAM/JSM, 2008 WL 4277713, at 9 (D. Minn. 2008). The SSA did not follow its regulations in this case by providing Dr. Hester with the background information necessary for him to render his opinion.

The Commissioner argues that Dr. Hester was able to proceed with his examination, in spite of the fact that he was not provided with Ms. Greenway's extensive mental health records because he had the SSA forms and the medical history Ms. Greenway herself reported. But Ms. Greenway consistently reported having memory problems and may or may not have been a reliable reporter of her medical history. *See Moore v. Colvin*, No. 11 C 5412, 2013 WL 2897662, 7 (N.D. Ill. 2013) (holding that in a case where the claimant suffers from long-standing mental impairments, a claimant's prior treatment records are even more important because severity and expression of mental impairments varies from day-to-day and are not always visible to a one-time examining physician). The lack of Ms. Greenway's medical records may well have

impaired Dr. Hester's ability to form an accurate opinion about Ms. Greenway's limitations. *See Brantley*, 637 Fed. Appx. At 895-96 (rejecting the Commissioner's argument that background information from claimants can substitute for medical records as inconsistent with the SSA's guidance in POMS and HALLEX").

In this case, it was error for the ALJ to rely on Dr. Hester's consulting opinion to reject Ms. Greenway's treating physician's opinion. The ALJ failed to establish that Dr. Hester's opinion, without the benefit of Ms. Greenway's medical records, was supported by better or more thorough medical evidence, or that Dr. Clements's opinion was wholly inconsistent with the record.

### IV. **Conclusion:**

After considering the record as a whole, the Court concludes the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed and remanded for action consistent with the opinion. This a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 28th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE